## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
### AT NASHVILLE

_____

|  |  |  |
|---|---|---|
| **IN RE: THE CONSERVATORSHIP** | ) | Sumner County Probate |
| **OF MATTHEW HURLINE**, | ) | No. 96P-101 |
|  | ) |  |
| Appellant, | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9703-PB-00135 |
|  | ) |  |
| **LONEY HUTCHINS, INDIVIDUALLY,** | ) |  |
| **and A.R.C., INC. d/b/a 21ST CENTURY** | ) |  |
| **LIVING SERVICES**, | ) |  |
|  | ) |  |
| Third Party Plaintiff/Appellee, | ) |  |
|  | ) |  |
| VS. | ) |  |
|  | ) |  |
| **SHEILA McNAMARA**, | ) |  |
|  | ) |  |
| Third Party Defendant/Appellant. | ) |  |
|  | ) |  |

**FILED**

**December 17, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

_____

From the Probate Court of Sumner County at Gallatin.
**Honorable Tom E. Gray, Chancellor**

**Samuel F. Anderson**, Nashville, Tennessee
**Dan R. Alexander**, Nashville, Tennessee
Attorney for Third Party Defendant/Appellant.

**John R. Phillips, Jr.**,
**Timothy R. Rector**,
PHILLIPS & INGRUM, Gallatin, Tennessee
Attorney for Third Party Plaintiff/Appellee.

OPINION FILED:

**REVERSED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

In 1983, at the age of 14, Matthew Hurline was involved in an accident and sustained a severe closed head injury which resulted in cognitive and behavioral disabilities. Since that time, Matthew has required assistance with his daily care. A 1996 neuro-psychological evaluation found him incapable of "living outside of a supervised setting" and needing "at least minimal assistance for all daily activities to maintain safety and focus on task." On December 30, 1991, Matthew's mother, Sheila McNamara, the appellant, was appointed his legal guardian by a Maryland court. This litigation is an attempt to determine whether Ms. McNamara can be held legally and financially accountable to the person and facility who has primarily provided Matthew's daily care since early 1992, the appellees, Loney Hutchins, individually, (Hutchins) and A.R.C., Inc. d/b/a 21st Century Living Services. The trial court entered a default judgment against McNamara in the amount of $107,760, for the care and services provided Hurline from January 1995 to August 6, 1996. The court also entered a judgment against Hurline, individually, and the Hurline conservatorship, in the amount of $115,260. Ms. McNamara has appealed from the judgment.[1] For the reasons expressed below, we reverse and remand.

Matthew was admitted to 21st Century Living Services (21st Century) in January 1992. Upon admission, the following "Letter of Understanding" was written and signed by McNamara to the facility:

> IT IS UNDERSTOOD THAT 21ST. CENTURY LIVING SERVICES WILL PROVIDE 24 HOUR SUPERVISION, THREE MEALS PER DAY, DAILY LEISURE/WORK ACTIVITIES AND OTHER SERVICES AS EXPLAINED IN THE PROGRAM DESCRIPTION FOR MATT HURLINE. THE COST IS $10,000 PER MONTH FOR THE FIRST FOUR MONTHS. AT THE END OF FOUR MONTHS MATT WILL BE RE-EVALUATED TO DETERMINE IF THE SUPERVISION AND THE PROGRAM COST CAN BE REDUCED OR IF IT SHOULD BE CONTINUED AT THE SAME RATE. IT IS ALSO UNDERSTOOD THAT THE MONTHLY PROGRAM COSTS WILL BE PAID BY MARY SHERMAN, MATT'S GRANDMOTHER, WHO IS [A] PARTY TO THIS UNDERSTANDING. [FEES] WILL BE DUE THE FIRST OF EACH MONTH.
>
> THIS UNDERSTANDING IS BETWEEN 21ST CENTURY LIVING SERVICES, SHEILA McNAMARA, AND MARY SHERMAN.

---

[1]As will be discussed in more detail hereinafter, Hurline, individually, and the conservatorship also appealed; however, suit was actually filed only against McNamara, as the guardian of her son and sought to recover against her personally.

> Loney, this must include that although I am Matt's legal guardian I am not financially responsible, Mary Sherman is and if she refuses this responsibility I must be notified immediately, as I cannot pay for Matt['s] care, not by choice but by reality.[2]

On February 20, 1996, Matthew was transferred from 21st Century to the Sumner Regional Medical Center (Sumner) for in-patient surgery (cholecystectomy). On February 26, Sumner sought to discharge Matthew from its facility after his successful recovery from the procedure. Appellees refused readmittance of Matthew citing financial problems.

After Sumner was unsuccessful in attempting to arrange Matthew's discharge into McNamara's care, it filed a petition, on March 27, 1996, to appoint a temporary conservator for Matthew (to provide for Matthew's discharge and to otherwise act in his best interest). The petition alleged Appellees' refusal to readmit Matthew and that McNamara had "refused to take responsibility for and ha[d] abandoned [Matthew]." Sumner further averred that McNamara had "refus[ed] to take any action" regarding Matthew's placement in a group home or institution as had been recommended by his psychologist. It was alleged that Matthew had incurred medical expenses in excess of $30,000 as a consequence of his failure to be discharged on February 26. Sumner alleged that it did not have the ability or resources to provide the type of care Matthew required, as it was an acute care facility, and that it was no longer medically necessary for Matthew to remain an in-patient. Finally, Sumner alleged that it notified McNamara of the petition "by phone" on March 26 and again the following day.[3]

Sumner also filed a petition requesting the court for an order to return Matthew to 21st Century. Sumner alleged that Hutchins had been Matthew's "de facto conservator" since 1992 and that, as such, had breached his fiduciary duty to Matthew by refusing his readmittance to the facility. It was further alleged that Hutchins had received "substantial" fees for Matthew's care and was the designated payee on Matthew's social security benefit checks.

---

[2]In the letter, McNamara also requests a monthly report from the facility regarding her son's progress.

[3]The record indicates that McNamara was a resident of Colorado.

After a hearing, the trial court entered an order finding that Hutchins had a contractual relationship with Matthew "through [his] legal guardian" and that a fiduciary relationship existed between the two "by virtue of the fact that [Hutchins] became the designated payee on [Matthew's] social security benefit checks." The court, therefore, held that Hutchins had a "fiduciary duty and responsibility" to find appropriate placement for Matthew to facilitate his discharge. The court expressly reserved the issue of whether Hutchins was in breach of his fiduciary duty.

In addition to responding to Sumner's petition, Appellees filed a third-party complaint, in June 1996, (the cause of action with which we are now concerned) against McNamara, "as the legal guardian and mother of Matthew Hurline." Appellees' answer acknowledges its failure to readmit Matthew to the facility in February 1996[4] on the basis that no funds, other than Matthew's social security checks ($470 per month), had been received by Appellees in exchange for Matthew's care for approximately the past 15 months. It was further acknowledged that until November 1994, Matthew's care was paid for by his grandmother, Mary Sherman. At this time Matthew was 26 years old. It was averred that since cessation of the payments, Appellees had made numerous requests of McNamara to assume responsibility for the care and living arrangements of her son and ward, but to no avail, and that all such requests had been "repudiated or ignored." Appellees asserted that the unpaid balance of Matthew's care as of February 28, 1996 was $115,248.70. They requested that McNamara be required to appear and show cause why sole responsibility for the care and supervision of her son should not be borne by her. It was further argued that McNamara be held accountable for the charges incurred for Matthew's care at 21st Century due to the breach of fiduciary duty to her son "by abandoning him and failing to make alternative arrangements for him."[5] Appellees sought dismissal of any claim for breach of fiduciary duty owed Matthew by them.

Pursuant to Appellees' complaint, a show cause order was entered against McNamara on June 6, 1996 requesting that she appear before the court on June 18, 1996. A hearing on the order

---

[4]The pleading states that since the trial court's April 1996 order Hutchins had readmitted Matthew to 21st Century.

[5]The record includes a letter from Hutchins to McNamara, dated January 10, 1996, indicating that McNamara was notified in September 1994 that she would need to find alternative living arrangements for her son and that "repeated correspondence" had occurred between the two regarding payment of the incurred fees. The letter also requests that McNamara reply in writing with her plans for her son's future care, both physically and financially.

was subsequently postponed until July 2, 1996. On July 1, 1996, McNamara filed, pro se, a document with the chancery court, dated June 27, 1996, requesting an "extension of time to answer, postponement of show cause to August 19, 1996." The court denied the "motion" for continuance, but allowed McNamara until August 19 to answer the complaint as to those issues left unresolved at the July 2 hearing. The latter hearing resulted in a determination that McNamara, "as the guardian and mother of Matthew Hurline," should take responsibility for his care and supervision. The order relieved Appellees from any such further responsibility.[6]

On August 6, 1996, McNamara filed a motion to dismiss the third-party complaint, alleging that the court lacked jurisdiction; that McNamara was not personally liable for her son's debts; and that there existed no written contract demonstrating McNamara's responsibility in this regard. The motion was denied on August 13.

Appellees then filed a "Motion for Default or Alternatively to Require Answer and Setting of Final Hearing." The motion recites that personal service of process of the third-party complaint was obtained on McNamara on June 17, 1996 in Colorado and that other than the motion to dismiss, McNamara had not answered or filed any other responsive pleadings.

A hearing occurred on November 19. On November 21, the trial court entered a default judgment against McNamara in the amount of $107,760 for the services provided Matthew, as outlined above, as well as the expenses of transporting Matthew to her. The court found that "such care and services were provided . . . by reason of the breach of the fiduciary responsibility of [McNamara] for her son and ward." The court also found Appellees to have a "valid claim and judgment" against Hurline, individually, and the Hurline Conservatorship and awarded Appellees $115,260.[7]

On December 23, 1996, McNamara filed an answer to the complaint, through

---

[6]This order also authorized Appellees "to deliver and place [Matthew] into the supervision and control of [McNamara]" and to transport him to her in Colorado if necessary.

[7]This amount represents the fees incurred for Hurline's care from December 1994 to August 6, 1996.

counsel, and asserted, *inter alia*, the affirmative defenses that no contract existed between the parties regarding Matthew's care, the statute of limitations barred the action and that there were insufficient facts to establish the vicarious liability of McNamara for the charges incurred by her son and ward. McNamara also filed a motion for new trial, stating, *inter alia*, that she did not have sufficient notice of the November 19 hearing as she was not made aware of it until November 12. She further asserted that she "did not fully appreciate the seriousness" of the proceedings since there was never a signed contract obligating her financially for Matthew's care. The motion was denied.

The issues on appeal are identified by the appellant as follows:

> I. Whether the Appellants were given adequate or proper notice of the Appellee's Motion for Default Judgment and whether said lack of notice constitutes a violation of due process of law?

> II. Whether the Trial Court was in error by ruling [that] Sheila McNamara, as guardian for Matthew Hurline, was vicariously liable for the debts of the ward, Matthew Hurline?

We will address the second issue first as we find it dispositive. It is argued that Ms. McNamara, as the legal guardian of her son, cannot be held financially responsible for the costs of his care where there exists no contractual arrangement to that effect. 39 C.J.S. *Guardian and Ward* §66 (1976) states, in part pertinent:

> The general rule is that a person who furnishes support or maintenance to a ward acquires no enforceable claim against the ward's guardian or the ward's estate in the guardian's hands for payment, compensation, or reimbursement, unless there was an expressed or implied agreement with the guardian therefor. . . . However, an infant ward's estate is ultimately liable for necessaries properly furnished the infant, particularly for education and clothing, and where the guardian neglects his duty with respect to maintenance, a third person who furnishes necessity items to the ward may look to the ward's estate for reimbursement.

39 C.J.S. *Guardian and Ward* § 174 additionally provides:

> In the absence of statute providing otherwise, if recovery or relief is sought against a minor ward the suit or proceeding may not be brought against the guardian, and the guardian cannot be sued personally for debts due solely from the ward. So in general, an

action at law does not lie against the guardian personally to recover for necessaries furnished to the ward in the absence of any express contract or promise on the part of the guardian; such action will not lie on the theory of an implied promise or implied assumpsit. In other words, relief with respect to debts of, or necessaries furnished to, the ward, as to which the guardian has not obligated himself personally, must be sought in some appropriate proceeding other than a direct action to charge the guardian personally.

Section 174 further states:

> *Action against ward.* In a proper case an action may be maintained against a ward, who usually may defend by his guardian, and, if recovery or relief is sought against a minor ward, the suit or proceeding must be brought against him, in the absence of statute providing otherwise.

It is clear in this case that Appellees brought suit against McNamara "as the legal guardian and mother of Matthew Hurline." Appellees have not pursued a judgment against Hurline, individually or the conservatorship. The third-party complaint states that Appellees are entitled to a judgment due to McNamara's "complete failure to fulfill her fiduciary duty to Matthew by abandoning him and failing to make alternative arrangements for him." We believe, however, that this duty runs to Matthew himself and his estate. Section 2 of C.J.S. *Guardian & Ward,* defines "guardian" as "a person who legally has the care of the person or property, or both, of another person, who is incompetent to act for himself. . . ." "[T]he function of a guardianship is to handle the person and property of the ward, and the whole theory of guardianship is to protect the ward during his period of incapacity to protect himself. . . . A guardianship is designed to further the ward's well-being, not that of the guardian." 39 C.J.S. *Guardian and Ward* § 3. With respect to the property of the ward, "the guardian is a trustee or fiduciary." 39 C.J.S. *Guardian and Ward* § 69. Additionally, Chapter 11 of Title 34 of the Tennessee Code, pertaining to "Guardianships and Conservatorships Generally," defines a "fiduciary" as "a guardian, coguardian, conservator or coconservator . . . ."

Quite obviously, a guardian may be removed from his/her official capacity where there is a failure to properly care for the ward. *See* 39 C.J.S. *Guardian and Ward* § 43. "The infant, by his next friend or a relative or other person having a legitimate interest in the infant's welfare,

may institute proceedings for the removal of guardian; but persons without the requisite interest may not commence such a proceeding." 39 C.J.S. *Guardian and Ward* § 45a.[8]  Appellees have not sought the removal of McNamara as her son's guardian; they seek only a money judgment from her.

It does not appear from the record that Appellees seek any judgment from Hurline, individually or the conservatorship. *Gann v. Burton*, 511 S.W.2d 244 (Tenn. 1974), holds "that an incompetent can be sued in his own name." *Gann*, 511 S.W.2d at 247.  In addition, Rule 17.01 T.R.C.P. currently provides that "[e]very action shall be prosecuted in the name of the real party in interest . . . ."  Although the trial court adjudged Appellees to have a "valid claim and judgment" against Hurline, individually, and the conservatorship, suit was noticeably not filed against them. As related in *Gann*:

> Moreover, in History of a Lawsuit, § 37, p. 40 (8th Ed. 1963), the following statement appears:
>
>> If the suit is upon a contract or wrong of an infant, or a lunatic, such infant or lunatic must be made defendant in the writ, and not his guardian.  The guardian is not responsible for the contracts of his infant or insane ward, and cannot be sued on them.  If the guardian makes the contract, then he alone must be sued and not the ward.

*Id*.

The contract, if there be any in this case, cannot be construed to obligate McNamara for the financial obligations regarding the care and supervision of her son.  The "letter of understanding" expressly states otherwise.  Although we find the present circumstances before us most unfortunate, we are bound by the confines of the law when ruling.  To this extent, it is equally necessary to reverse the judgment as to Hurline, individually, and the conservatorship as no action

---

[8]T.C.A. § 34-11-123 also provides, in part:

**Summons to appear for abuse, mismanagement or failure to perform -- Removal -- Submission of matter to district attorney general's office. --** The court in its discretion may summon a fiduciary to appear before the court and may, if cause be shown, remove such fiduciary for any abuse, mismanagement, neglect or failure to perform the duties of fiduciary as set forth in this chapter and chapters 12 and 13 of this title.

was taken against them.

In light of our holding, the first issue is pretermitted.

The judgment of the trial court is, accordingly, reversed and this cause remanded for any further necessary proceedings. Costs are assessed against the appellees, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)